UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDANY SAMY JOSEPH, A-233-304-226, | No.  1:26-cv-00678 DC AC |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| WARDEN OF THE GOLDEN STATE ANNEX, et al., | |
| Respondents. | |

Petitioner, an immigration detainee proceeding through counsel, has filed a First Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging his detention by the Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE").  ECF No. 16.  Petitioner argues that detention based on his immigration status violates his due process rights under the Fifth Amendment, as well as the Immigration and Nationality Act, including the Temporary Protected Status ("TPS") provisions, 8 U.S.C. § 1254a.  Petitioner seeks immediate release or a § 1226(a) bond hearing at which respondents must establish by clear and convincing evidence that petition is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks.  As discussed below, the court recommends that petitioner's request for habeas relief be granted, and that petitioner be immediately released with the same conditions to which he was subject immediately prior to his detention.

1

I.      Factual Background

Petitioner is a native and citizen of Haiti who entered the United States at Fort Lauderdale, Florida, as a nonimmigrant on November 1, 2023, and was released on parole through the Cubans, Haitians, Nicaraguans and Venezuelans ("CHNV") Parole Program which offered humanitarian parole for qualifying individuals from those four countries.  ECF No. 16 at 10; ECF No. 10 at 5.  For over a year, petitioner resided in the Northeast United States[1] and worked to support his family in Haiti.  ECF No. 16 at 11.

In September 2024, petitioner applied for TPS and later completed his biometrics appointment in support of his TPS application.  Id. at 10.  Petitioner has no criminal history, and the government did not seek to detain him when his parole was terminated because the government ended the CHNV parole program for all aliens paroled into the United States under the program on June 12, 2025.  Petitioner continued to reside in the United States and his TPS application was still pending when he was re-detained by respondents at an unrelated court hearing on January 5, 2026.[2]  Id.  Prior to his detention, petitioner was not provided written notice of the reason for his detention, respondents did not assess whether he was a danger to the community or flight risk, and petitioner did not receive a hearing.  Id.

On January 5, 2026, DHS initiated removal proceedings under Section 240 of the Immigration and National Act ("INA") by issuing a Notice to Appear charging petitioner with having entered the United States as an applicant for admission not in possession of valid entry documentation who was therefore removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I).[3]  See ECF No.

---

[1]  Petitioner indicates that he lived in Massachusetts after entering the United States (ECF No. 16 at 10), and the Notice to Appear identified petitioner's State of residence as New Hampshire (ECF No. 16 at 10).

[2]  Petitioner represents that his unrelated court proceedings involved a domestic dispute and were ultimately dismissed, and petitioner has no criminal convictions.  ECF No. 16 at 10.  Respondents have not disputed this representation or provided any evidence to the contrary.  Respondents also do not argue petitioner is subject to mandatory detention under § 1226(c), which provides for mandatory detention of noncitizens with certain criminal arrests or convictions, and the present facts are insufficient to demonstrate that § 1226(c) is applicable.

[3]  For consistency, the undersigned will cite to the applicable United States Code sections throughout without reference to the corresponding section of the Immigration and Nationality Act.

10 at 7 (Form I-862, Notice to Appear); ECF No. 10 at 1 (Respondents' assertion that petitioner entered the United States illegally and was placed into removal proceedings); ECF No. 16 at 10-11.  Petitioner is currently detained at the Golden State Annex detention facility.  ECF No. 16 at 10.

II.      Procedural History

Petitioner, through appointed counsel, filed the operative First Amended Petition challenging his detention on March 20, 2026.  ECF No. 16.  The petition asserts that petitioner's arrest and re-detention without a hearing violates the INA and due process.  Id. at 11-15.  Specifically, petitioner argues that his re-detention violates the INA because, as a noncitizen who previously entered the country and was residing in the United States prior to being apprehended and placed in removal proceedings, he is subject to § 1226(a), not § 1225(b)(2).  Id. at 11-12.  He further argues that his re-detention without a bond hearing to determine whether he is a safety or flight risk violates due process.  Id. at 12-13. In addition, petitioner contends that he was entitled to consideration for release on bond as a member of the Bond Eligible Class in Maldonado Bautista v. Santacruz, 820 F.Supp.3d 1016, No. 25-cv-01873-SSS-BFM (C.D. Cal. Feb. 18, 2026), and that he was entitled to TPS benefits (including immunity from detention) until a final determination regarding eligibility is made on his TPS application.  Id. at 13-14.

By Minute Order dated March 24, 2026, the court ordered respondents to file an answer/return that substantively addresses whether there are any factual or legal issues in this case that materially distinguish it from the court's prior orders addressing due process concerns in similar circumstances: Orellana Gonzalez v. Cerna, No. 1:26-cv-1344 DC JDP (HC), 2026 WL 604193 (E.D. Cal. Mar. 4, 2026); Singh v. Noem, No. 1:26-cv-1150 DC JDP (HC), 2026 WL 585512 (E.D. Cal. Mar. 2, 2026); Pineda v. Chestnut, No. 1:25-cv-1970 DC JDP (HC), 2026 WL 25510 (E.D. Cal. Jan. 5, 2026); or D.L.C. v. Wofford, No. 1:25-cv-1996 DC JDP (HC), 2026 WL 25511 (E.D. Cal. Jan. 5, 2026).  ECF No. 17.

Respondents filed a generic two-page response/motion to dismiss that failed to acknowledge or address the above-cited precedent as directed by the court.  ECF No. 18.  Respondents simply contend that petitioner's prior release in DHS's discretion did not convert his

3

presence into an "admission," and that his detention is mandated by statute.  Id. at 1-2.

Respondents also ask the court to consider persuasive authority from the Eighth Circuit that

respondents believe support their statutory interpretation.  Id. at 2 (citing Avila v. Bondi, 170

F.4th 1128, 1138 (8th Cir. 2026) (holding a noncitizen present in the United States without

having been admitted is both an "applicant for admission" and "seeking admission" and therefore

subject to mandatory detention without bond under § 1225(b)(2)(A)).

Petitioner filed a reply arguing that respondents' failure to materially distinguish this case

from the court's prior decisions should be deemed a concession that the due process violations

suffered by petitioner are materially the same as those in the cases identified by the court's

Minute Order.  ECF No. 19 at 3.  Even if the court did not find that petitioner accrued a liberty

interest and was therefore entitled to pre-deprivation hearing, petitioner argues that he was prima

facie eligible for TPS and therefore entitled to the benefits of TPS status while his application was

pending.  Id. at 6 (citing 8 U.S.C. § 1254a(a)(4)(B)).  Respondents have wholly failed to respond

to petitioner's arguments regarding the protections available to him under TPS regulations.  Id.

Petitioner asks the court to grant the petition, deny respondents' motion to dismiss, and order

petitioner's immediate release from detention.  Id. at 3.

III.    Legal Standard

A writ of habeas corpus may be granted to anyone who is held in custody in violation of

the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3); Magana-Pizano

v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal

courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of

the Constitution or laws or treaties of the United States.'" (citations omitted)).  In federal habeas

proceedings, the petitioner is required to prove their case by a preponderance of the evidence.

Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

IV.    Discussion

A.    Statutory Framework

Title 8 U.S.C. § 1225 governs the procedures by which the government may mandatorily

detain "an applicant for admission."  Section 1225(a)(1) defines "an applicant for admission" as a

4

noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including [a noncitizen] who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

"[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings v. Rodriguez, 583 U.S. 281, 287 (2018).  Both categories are subject to mandatory detention until a certain point or until certain proceedings have concluded.  Id.  Despite mandatory detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit."  Id. at 288 (citing 8 U.S.C. § 1182(d)(5), 8 C.F.R. §§ 212.5(b), 235.3 (2017)).  The "express exception to detention" under 8 U.S.C. § 1182(d)(5) "implies that there are no *other* circumstances under which [noncitizens] detained under § 1225(b) may be released."  Id. at 300.  Accordingly, there is no statutory right to a bond hearing for noncitizens detained under § 1225(b).  Id. at 296-97.  By regulation, release is available only where "the aliens present neither a security risk nor a risk of absconding."  8 C.F.R. § 212.5(b).

Section 1226, on the other hand, "provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal" and, under subsection (a), the government has broad discretion to detain or release.  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing Jennings, 583 U.S. at 288).  It also provides that "a detainee may request a bond hearing before an immigration judge at any time before a removal order becomes final" and "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances."  Id. at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19).

    B.    Due Process

It appears undisputed that, as a noncitizen paroled into the country as part of the CHNV Parole Program, petitioner was initially paroled pursuant to 8 USC § 1182(d)(5)(A), which authorizes the Secretary of Homeland Security to parole individuals temporarily for urgent humanitarian reasons or when it serves the public interest.  However, petitioner asserts that upon

the DHS's termination of the CHNV parole program, he was no longer an arriving alien and therefore his detention is governed by § 1226(a).  ECF No. 16 at 11.  Petitioner further contends that unless they are subject to § 1225(b)(1), § 1226(c), or § 1231 (which respondents do not allege apply in this case), noncitizens like himself who previously entered the country and are residing in the United States are detained under § 1226(a) and not § 1225(b)(2).  Id.

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention," Jennings, 583 U.S. at 306 (citations omitted), whereas parole under § 1182(d)(5)(A) is limited to "urgent humanitarian reasons or significant public benefit," id. at 288 (citations omitted).  However, it is unnecessary for the undersigned to resolve which statute governed petitioner's continued release after his initial parole was terminated because, as outlined below, petitioner was entitled to a pre-deprivation bond hearing prior to being detained regardless of which statute he was paroled under.

The Due Process Clause protects persons in the United States from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690.

"Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute."  Omer G.G. v. Kaiser, No. 1:25-cv-1471 KES SAB, __ F. Supp. 3d __, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) (citing Young v. Harper, 520 U.S. 143, 147-49 (1997); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973); Morrissey v. Brewer, 408 U.S. 471, 482 (1972)).  "[A] substantial number of district courts in the Ninth Circuit have found that noncitizens paroled into the United States under § 1182(d)(5) have a liberty interest in their continued release and are entitled to certain due process protections."  D.L.C. v. Wofford, No.

6

1:25-cv-1996 DC JDP, 2026 WL 25511, at *4 (E.D. Cal. Jan. 5, 2026) (collecting cases);[4] Flores v. Chestnut, No. 1:26-cv-0078 TLN CSK, 2026 WL 504650, at *4 (E.D. Cal. Feb. 24, 2026) (court did not need to determine whether petitioner was detained under § 1225 or § 1226 because she "had a protected liberty interest in her release, regardless of which detention statute applies." (collecting cases)).

> Specifically, this court has found that the Due Process Clause requires that, in order for the government to re-detain a noncitizen who has been previously released on bond or conditional parole under 8 U.S.C. § 1226(a), or humanitarian parole under 8 U.S.C. § 1182(d)(5), the government must provide a pre-deprivation bond hearing before a neutral arbiter at which the noncitizen's eligibility for bond must be considered.

Cesar Luis v. Warden, No. 1:26-cv-1823 DC SCR, 2026 WL 700713, at *1 (E.D. Cal. March 12, 2026) (collecting cases). By initially releasing petitioner on parole, the government necessarily determined that he was "neither a security risk nor a risk of absconding," 8 C.F.R. § 212.5(b), and there is no evidence that there was a change in this assessment. By permitting petitioner to remain at liberty for over two years, the government enabled petitioner to develop a protected liberty interest in remaining out of custody.

For these reasons, the undersigned finds that petitioner has established a liberty interest in his continued release. Having determined that a liberty interest exists, the court must now examine what process is due. See Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (the court "first asks whether there exists a liberty or property interest which has been interfered with" and then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient").

To determine what process is due, the court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

---

[4] The court notes that respondents in D.L.C. similarly attempted to distinguish the case by arguing that the petitioner was detained under § 1225(b)(1). 2026 WL 25511, at *2 (noting respondents argued case was distinguishable from Labrador-Prato and Selis Tinoco because petitioner was mandatorily detained under § 1225(b)(1)).

> administrative burdens that the additional or substitute procedural requirement would entail.

<u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." <u>Rodriguez Diaz</u>, 53 F.4th at 1206.

With respect to the first factor, petitioner has a strong private interest in remaining free from detention.  <u>Zadvydas</u>, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").  Petitioner was out of custody for over two years prior to his detention, during which time he settled in Massachusetts and became gainfully employed.  ECF No. 16 at 10.  He asserts, and respondents do not dispute, that he has no criminal record and has a TPS application pending.  He further asserts, and respondents do not contest, that he was found suitable for release when he was initially paroled into the United States and that there has been no change in circumstances that would justify his detention.  <u>Id.</u> at 10.  This factor therefore weighs in petitioner's favor.

The second factor, the risk of erroneous deprivation, also weighs in petitioner's favor.  Considering that petitioner has been detained for over five months without being provided a bond hearing, the risk of erroneous deprivation is high.  See <u>A.E. v. Andrews</u>, No. 25-cv-0107 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [a petitioner's] interest is high where [h]e has not received any bond or custody redetermination hearing[.]" (alterations in original) (citation and internal quotation marks omitted)); <u>R.D.T.M. v. Wofford,</u> No. 1:25-cv-01141 KES SKO, 2025 WL 2617255, at *6 (E.D. Cal. Sept 9, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." (alteration in original) (citations omitted)).  Respondents do not argue that petitioner is a flight risk or danger to public safety, and no neutral arbiter has made such a determination.

Finally, while the government has an interest in enforcing its immigration laws, "its interest in detaining petitioner without a hearing is 'low' and custody hearings in immigration

8

court "are routine and impose a 'minimal' cost." R.T.D.M., 2025 WL 2617255, at *6 (citing Ortega, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

For these reasons, the court finds that the government's interest in detaining petitioner without a hearing is low and does not outweigh petitioner's substantial liberty interest or the high risk of erroneous deprivation of liberty and respondents were required to provide him with a pre-deprivation hearing prior to revoking his parole. Respondents point to no reasons why a pre-deprivation hearing could not be held, and provide no evidence of "urgent concerns," warranting petitioner's re-detention without a hearing, thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M.R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (finding no urgency where ICE waited over six weeks after petitioner's arrest by local law enforcement to arrest and re-detain petitioner).

Furthermore, respondents present no factual or legal issues that materially distinguish this case from the court's prior orders in Orellana Gonzalez, 2026 WL 604193; Singh, 2026 WL 585512; Pineda, 2026 WL 25510; D.L.C., 2026 WL 25511; or any other similar cases previously decided by this court. Considering the facts of this case and respondents' failure to distinguish this case in any way, the undersigned adopts and incorporates by reference the reasoning in Orellana Gonzalez, Singh, Pineda, and D.L.C. and finds that petitioner's re-detention without a hearing before a neutral adjudicator at which the government would be required to justify his re-detention by clear and convincing evidence violates due process. The court finds relief is appropriate on petitioner's claim that his detention without a pre-deprivation hearing to determine wither he is a flight risk or danger to the community violates his procedural due process rights. The court therefore declines to address petitioner's claim that his detention violates the INA, including the TPS provisions, as it seeks the same or similar relief (i.e., petitioner's immediate release).[5]

---

[5] See N.K. v. Noem, No. 1:26-cv-00292-KES-SAB (HC), 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); Constantinovici v. Bondi, No. 3:25-cv-02405-RBM-AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release").

9

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's first amended petition for writ of habeas corpus (ECF No. 16) be GRANTED, as follows:

   a. Respondents shall IMMEDIATELY RELEASE petitioner Jordany Samy Joseph, A-233-304-226, with the same conditions he was subject to immediately prior to his detention on January 5, 2026. At the time of release, respondents must return all of petitioner's documents and possessions.

   b. Respondents shall not impose any additional restriction on petitioner unless it is determined to be necessary at a future pre-deprivation/custody hearing.

   c. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless they provide at least 7 days' written notice to petitioner and hold a pre-deprivation bond hearing before a neutral decision maker, at which hearing respondents will bear the burden of demonstrating that petitioner is a flight risk or danger to the community and petitioner's eligibility for bond must be considered.

   d. The order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal and petitioner receives notice of that final order of removal.

2. Within three days of an order adopting these findings and recommendations, respondents be required to file a notice of compliance confirming petitioner's release and that the conditions of his supervision are the same as those to which he was subject prior to his January 5, 2026 detention.

3. The Clerk of the Court be directed to enter judgment for petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that

28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Within **seven** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 11, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

11